**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

SIGNATURE CREDIT PARTNERS, LLC          CIVIL ACTION NO. 5:12-CV-0775

VERSUS                                                    JUDGE ELIZABETH ERNY FOOTE

CASAIC OFFSET & SILKSCREEN, INC.       MAGISTRATE JUDGE HAYES

## MEMORANDUM RULING

Signature Credit Partners, LLC ("Signature") has appealed to this Court the bankruptcy court's judgment granting motions for summary judgment in favor of the Debtor, Casaic Offset & Silkscreen, Inc. ("Casaic") and the Creditor, the Bank of the West. The motions required the bankruptcy court to rank the security interests on a commercial offset printing press owned by the Debtor.  The bankruptcy court held that Signature's purchase security interest on the piece of equipment had lapsed; and, therefore, the security interest of the Bank of the West was primary.

Signature admits that the security interest had not been continued on the public records beyond its expiration date.  However, Signature argues that it had attempted through a sub-contractor to continue the security interest in a timely manner by filing all necessary documents with the Caddo Parish Clerk of Court.  The clerk, in error, refused the filing and returned it to the sub-contractor with a notation that the security interest had already been continued.  Signature accepted the word of the Clerk of Court and did no further investigation in the matter, despite the fact that it had not previously continued the

1

security interest.  This Court holds that once Signature's UCC Financing Statement was not continued, it lapsed, ceasing to be effective under Louisiana law.  Neither this Court nor the bankruptcy court has the power to supplant the black letter of state law by invoking equitable powers to breathe life into a security interest which on its face had expired on the public records.  For the reasons outlined below, this Court affirms the judgment of the bankruptcy court.

## FACTS

The facts in this matter are undisputed; it is the legal effect of those facts which forms the basis of the dispute before the Court.  On February 8, 2011, the Debtor, Casaic, voluntarily filed for bankruptcy relief, pursuant to Chapter 11.  The Debtor operates a printing business and owns a commercial offset printing press.

On October 4, 2000, the Bank of the West's predecessor in interest, filed an "all inclusive" UCC financing statement in the records of Caddo Parish, covering all of the equipment of the Debtor whether presently owned or later acquired.[1]  This UCC financing statement was continued twice by the timely filing of the continuation statement in the Caddo Parish records.

Signature's original security interest in the printing press arose on November 22, 2000 when its predecessor in interest, Man Roland, Inc., filed a UCC financing statement in the records of Caddo Parish covering the press itself.  The November 22, 2000 security

---

[1] GE Capital Small Business Finance Corporation was the original holder of this security interest. GE Capital assigned that interest to the Bank of the West by virtue of an assignment filed in the records of Caddo Parish on July 25, 2007.

interest was continued on September 7, 2005, prior to its assignment to Signature on June 2, 2006.  This is the security interest in question.

The Signature security interest was a purchase money security interest, and originally primed the Bank of the West's "all inclusive" financing statement.[2]  The UCC filing for Signature's purchase money security interest was valid until November 22, 2010.  On August 10, 2010, Signature placed an order with Corporation Service Company ("CSC") to file a UCC-3 continuation statement for this purchase money security interest.  This continuation, if effective, would have continued Signature's security interest to November 22, 2015.  On August 11, 2010, CSC prepared the continuation statement and sent the UCC-3 via overnight courier to the Caddo Parish Clerk of Court.

On August 23, 2010, CSC received a rejection notice from the Caddo Parish Clerk of Court along with the unfiled continuation statement and returned filing fee. The rejection notice listed the reason for rejection as "Other CONTINUATION ALREADY FILED ON 07/07/10 #091136583".  The Rejection Notice did not include a copy of Instrument #091136583, nor did Signature or CSC on its behalf follow up to determine who had filed this previous continuation statement.

The UCC financing statement originally filed on November 22, 2000 recognizing the purchase money security interest, which was later assigned to Signature, is identified in the

---

[2] In addition to Signature's purchase money security interest in the particular printing press, Signature also obtained, via assignment, a separate UCC "all inclusive" security interest in the other equipment.  This interest was originally obtained on September 7, 2005 and continued by virtue of a continuation statement filed in the records of Caddo Parish on March 31, 2010.  In this appeal, the parties do not dispute that this "all inclusive" security interest is secondary to the Bank of the West's "all inclusive" security interest.  The only question before the Court is the ranking of the security interest as to the particular printing press on which Signature originally had a purchase money security interest.

Clerk of Court's records as "lapsed."  It appears from the testimony of the Clerk of Court that the employee of the clerk's office entered the wrong identifying number for Signature's continuation statement into the electronic data system for the Louisiana Secretary of State's office.  This apparently resulted in the erroneous information that Signature's security interest had already been continued prior to Signature's continuation request in August.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment de novo, applying the same standards as the bankruptcy court.  Apache Corp. v. W & T Offshore, Inc., 626 F.3d 789, 793 (5th Cir. 2010).

## THE LAW

Signature cannot prevail in this case as a matter of law.  Its purchase money security interest lapsed when the continuation statement was not filed in the public records.  Even assuming the correctness of the factual allegations by Signature as to why the continuation statement was not properly filed, those facts do not affect the outcome of this case.

First, there is no dispute that Louisiana law regarding the ranking of liens governs this dispute.  Under Louisiana Revised Statute 10:9-515(d), a continuation statement must be filed in the same filing office where the financing statement was originally filed within six (6) months of the expiration of the five (5) year period specified in La. R.S. 10:9-515(a).  In this case, Signature's predecessor in interest originally filed its UCC financing

4

statement on November 22, 2000 and timely filed a continuation statement on September 7, 2005.  Although Signature contends that it attempted to file a continuation statement, the facts are clear that no continuation statement was filed.  Therefore, as a matter of law, Signature's financing statement lapsed on November 21, 2010.  La. R.S. 10:9-515(c) provides that if a continuation statement is not timely filed, a security interest is deemed to have lapsed and "upon lapse, a financing statement ceases to be effective and any security interest or agricultural lien that was perfected by the financing statement becomes unperfected, unless a security interest is perfected otherwise."  Thus, once Signature's UCC financing statement lapsed, it ceased to be effective pursuant to the clear language of Louisiana law.  La. R.S. 10:9-515(c) further provides:

> [i]f a security interest . . . becomes unperfected upon lapse, it is deemed never to have been perfected as against a purchaser of the collateral for value.

The comments to this section state that a secured creditor is a purchaser for value.  Thus, a creditor holding a prior junior interest would gain priority in the event of a lapse.  Appellees cite the illustrations provided by the Official Comment which provides, in part:

> **Lapse**.  When the period of effectiveness under subsection (a) or (b) expires, the effectiveness of the financing statement lapses.  The last sentence of subsection (c) addresses the effect of lapse.  The deemed retroactive unperfection applies only with respect to purchasers for value; unlike former Section 9-403(2), it does not apply with respect to lien creditors.

> **Example 1:**  SP-1 and SP-2 both hold security interests in the same collateral.  Both security interests are perfected by filing.  SP-1 filed first and has priority under Section 9-322(a)(1).  The effectiveness of SP-1's filing lapses.  As long as SP-2's security interest remains perfected thereafter, SP-2 is entitled to priority over SP-1's security interest, which is deemed never to have

5

been perfected as against a purchaser for value (SP-2).  See Section 9-322(a)(2).

In this case, it is undisputed that the Bank of the West held security interests in the printing press in question which remained perfected after the lapse of Signature's financing statement.  Therefore, as a matter of Louisiana statutory law, the Bank of the West's security interest is entitled to priority over Signature's lapsed purchase money security interest in the printing press.

## SIGNATURE'S ARGUMENTS

Signature's arguments are not persuasive to this Court.  First, Signature argues that although Louisiana did not adopt UCC § 9-516(b) which provides that the mere communication of a record to a filing office and tender of the filing fee constitutes filing, the legislature did not do so for the wrong reasons and therefore this Court should read that language into the statutory law.  Signature points out that Chapter 9 is Louisiana's version of what is known nationally as UCC Article 9.  Signature states that in 2001, Chapter 9 was revised to conform with the revisions in the UCC.  However, those revisions did not include UCC § 9-516(d) which states:

> A record that is communicated to the filing office with tender of the filing fee, but which the filing office refuses to accept for a reason other than one set forth in subsection (b), is effective as a filed record except as against the purchaser of the collateral which gives value and reasonable reliance upon the absence of the record from the files.

Despite this acknowledgment, Signature argues that the comments state that this particular provision was left out of the Louisiana law for the following reasons:

> Revised Chapter 9, however, has no need for this provision

6

(referring to UCC § 9-516(d)).  In other states while all filings must be made in one central office, typically the Secretary of State, a filer has limited options when that office improperly rejects a filing.  In contrast, in Louisiana, a filer has a choice of 64 filing offices for uniform commercial code filings, one in each parish.  In the rare event that a filing office in Louisiana improperly rejects a filing, the filer has the easy option of filing in another parish.   La. R.S. 10:9-516, Louisiana Official Revision Comment (d).

[Record Document 5, p. 22 (emphasis omitted)].  Thus, Signature argues the legislature's rationale is incorrect.  Signature argues that for filing a continuation there is only one filing office, i.e., the Secretary of State.  However, for whatever reason, Louisiana did not enact this provision of UCC-9, and neither this Court nor the bankruptcy court can supply that language to the Louisiana statutory scheme.

Signature's second argument is that the Bank of the West should be estopped from obtaining an unjustified windfall because the Bank of the West never relied upon the putative lapse of Signature's security interest.  Signature argues that the debtor has confirmed that the Bank of the West did not extend any new loans or financing in 2010 or 2011.  This Court holds these facts are irrelevant to the ranking of security interest under the Louisiana statutory scheme.

Signature also points to La. R.S. 10:9-517 and urges that the principles of that statute be applied in this situation despite the fact that the literal language of the statute is not applicable to the case at bar.  That statute addresses those situations in which the Clerk of Court's office or the Secretary of State does not correctly index a record.  In those situations, the statute says, the record is still effective.  This statute, however, is not

applicable to the situation at hand.  In this case, the parties are not dealing with a mis-filed or mis-indexed document, but with no document at all.

Signature also argues that recognizing the non-existing continuation of its security interest does not contradict the public records doctrine in that, according to Signature, a third party searching the records at the time the Debtor filed for bankruptcy would have seen that there was a security interest perfected by Signature for at least eight or nine months.  Signature argues, "that creditor would then have been on notice to inquire with Signature as to whether its security had truly been terminated or simply lapsed." [Record Document 5, p. 33].  This statement by Signature is incorrect.  A third party searching the records would have been entitled to rely on the fact that those records present no continuation of the Signature security interest.  There would be no duty on a third party to inquire any further.  As stated above, whether the security interest had been terminated or simply lapsed is of no moment under Louisiana law.  The effect is the same: that security interest has ceased to exist.

Overlaying all of Signature's arguments is that the bankruptcy court should have employed its equitable powers and ignored the black letter of Louisiana law.  United States Bankruptcy Judge Stephen V. Callaway refused to invoke any equitable powers of the bankruptcy court in this case.  He stated:

> I don't think I have the authority under § 105 to do what
> you're asking.  [§] 105(a) says the court may issue any order,
> process or judgment that is necessary or appropriate to carry
> out the provisions of this title.

> \*\*\*

> The United States Supreme Court has expressed on more than
> one occasion that [§] 105 doesn't give me Article III powers.
> It gives me the right to issue any order, process or judgment
> that's necessary or appropriate to carry out the provisions of
> this title.
>
> What you are asking me to do is, in an Article I court, to make
> a ruling, a substantive ruling, as to state law.  I'm not going to
> do that.  I'm going to accept the state law as it is and I'm not
> going to use [§] 105 because I don't think I can use it to right
> the wrong.

[Record Document 3-4, p. 5].

Judge Callaway's remarks raise two issues.  First, he questions whether or not the

equitable powers given to a bankruptcy court are broad enough to grant the relief requested

by Signature.  Second, Judge Callaway questions whether even if he had such power, the

exercise of such power would be appropriate in this case.  Regardless of the extent of a

bankruptcy court's equitable power, this Court holds that equitable powers cannot be used

to supplant or override the clear language of a state's statutes.

Signature ignores its own failings in contributing to the situation in which it finds

itself.  As pointed out by Judge Callaway, when the sub-contractor presumably reported

back to Signature the information which it received from the Clerk of Court, that is, that the

security interest had already been continued, someone in Signature's operation should have

performed "their own due diligence internally to determine whether or not that (the

continuation) had in fact occurred." [Record Document 3-4, p. 4].  Judge Callaway observed

that at the time that the Clerk of Court sent the notice to Signature's sub-contractor, there

was still time left to determine the clerk's mistake and rectify it.

## CONCLUSION

For these reasons, the bankruptcy court's judgment, dated November 17, 2011, which granted the motions for summary judgment and ranked the security interests in question [Record Document 32 of the Bankruptcy Court Adversary Proceeding No. 11-01006, Case No. 11-10265] is **AFFIRMED**.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 1st day of June, 2012.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE